IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DOLORES ROSE SILVA,

       Plaintiff,

vs.                                             CIVIL NO. 13-623 CG

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Dolores R. Silva's *Motion to Reverse or Remand for Rehearing, with Supporting Memorandum*, ("Motion"), filed on November 18, 2013, (Doc. 19); *Defendant's Response to Plaintiff's Motion to Reverse and Remand the Administrative Agency Decision* ("Response"), filed on January 17, 2014, (Doc. 20); and Ms. Silva's *Reply to Defendant's Response to Motion to Reverse and Remand* ("Reply"), filed on February 3, 2014, (Doc. 21).

On January 12, 2011, Dolores R. Silva filed an application for supplemental social security benefits and disability insurance, alleging disability beginning on that date. (Administrative Record ("AR") 117–19, 122–27). Her applications were denied on February 21, 2011, (AR 55, 56), and also upon reconsideration on July 18, 2011, (AR 57, 58). Ms. Silva filed her request for a hearing on September 1, 2011, (AR 75–80); a hearing was held on July 26, 2012, before Administrative Law Judge ("ALJ") Ann Farris (AR 27–54). Ms. Silva and Pamela Bowman, an impartial vocational expert, testified at the hearing. (AR 27–54). At the hearing, Ms. Silva amended her alleged onset date to November 12, 2010. (AR 32). The ALJ issued her opinion on September 25, 2012, finding Ms. Silva to be not disabled under 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 22).

Ms. Silva filed an application for review by the Appeals Council, which was summarily denied, (AR 1–7), making the decision of ALJ Farris the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Silva complains that the Commissioner committed reversible, legal error by: (1) failing to properly consider all of the additional evidence she submitted to the Appeals Council; (2) formulating a residual functional capacity determination unsupported by substantial evidence and the law; and (3) adopting the vocational expert's erroneous testimony. (Doc. 18).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the Appeals Council did not perform the proper legal analysis of the additional evidence submitted by Ms. Silva, the Court finds that the Motion should be **GRANTED** and the case should be **REMANDED** for further proceedings.

### I.     Standard of Review

The standard of review in a Social Security appeal is whether the final decision of the Commissioner of the Social Security Administration is supported by substantial evidence and the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but

should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the sequential evaluation process, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, in light of his residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background

Ms. Silva applied for disability benefits alleging that she suffered from a herniated disc, heart problems, and high blood pressure. (AR 143). The administrative record includes Ms. Silva's medical records, earnings records, work history report, disability application, hearing testimony, examining consultative reports, and non-examining state agency evaluations, which were used by the ALJ to evaluate Ms. Silva's disability claim.

At step one, ALJ Farris determined that Ms. Silva had not engaged in substantial gainful activity since November 12, 2010. (AR 15). At step two, the ALJ concluded that Ms. Silva was severely impaired with degenerative disc disease of the lumbar spine without stenosis, and a mood disorder. (AR 15–16). The ALJ did not find Ms. Silva's heart problems and high blood pressure to be severe impairments. At step three, the ALJ determined that none of Ms. Silva's impairments, solely or in combination, equal one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 16–17). The ALJ proceeded to step four, and made an RFC finding that Ms. Silva can perform a restricted range of light work, as it is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (AR 17–20). ALJ Farris concluded that Ms. Silva was not capable of performing any of her past relevant work. (AR 21).

At step five, the ALJ considered Ms. Silva's advanced age, high school education, transferable filing skills acquired from past work, and her RFC. (AR 21–22). ALJ Farris noted that Ms. Bowman had testified that a hypothetical individual with Ms. Silva's same age, education, past relevant work experience, and RFC, could do the job of filing clerk. (AR 21–22). Ms. Bowman also stated that there were significant numbers of filing clerk jobs existing in the national economy. (AR 22). ALJ Farris found Ms. Bowman's testimony to be consistent with the information contained in the Dictionary of Occupational Titles.

The ALJ concluded that Ms. Silva was capable of doing jobs that exist in significant numbers in the national economy, and that she was therefore not disabled. (AR 21–22).

### A. *The ALJ's RFC Finding*

The ALJ found that Ms. Silva had the RFC to perform a restricted range of light work. Light work requires the worker to be able to lift 20 pounds at a time, with frequent lifting and carrying of up to ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). A job in the "light work" category "requires a good deal of walking or standing," of approximately six hours of an eight-hour workday. SSR 83-10, 1983 LEXIS 30, *13–14. ALJ Farris limited the range of light work she assessed Ms. Silva could do to: (i) having only occasional and superficial interaction with co-workers; (ii) never kneeling, crouching, or crawling; and (iii) only occasionally climbing, balancing, and stooping. (AR 17–21). The ALJ explained that she relied on the medical evidence in the record and Ms. Silva's testimony as to her alleged symptoms, in making the RFC finding. (AR 17).

ALJ Farris recited the material medical evidence and medical source opinions in the record. Ms. Silva checked into Phoenix Baptist Hospital on June 4, 2010, with complaints of chest pain and abdominal pain. (AR 347–61). Chest x-rays and other medical tests that were performed at the hospital came back normal. Ms. Silva was diagnosed with atypical chest pain, abdominal pain, and anxiety disorder. (AR 354). In December 2010, Ms. Silva presented at University of New Mexico Health Sciences Center ("UNMHS") with low back pain, right leg edema, and chest pain with shortness of breath. (AR 243–48). Chest x-rays and a venous duplex report revealed no acute cardiopulmonary process and no evidence of deep vein thrombosis. (AR 250–56). During a mental-status examination on July 5, 2011, Ms. Silva complained of back pain and radiculopathy to her right leg, swelling in her left leg, chest pain, high blood pressure,

and high cholesterol. (AR 314).

The ALJ also discussed Ms. Silva's subjective complaints regarding her illnesses. Ms. Silva completed a function report on January 2011 in connection with her disability benefits application. (AR 175–81). Ms. Silva stated that she is able to do some things by herself, but that she is limited because of back, leg, and chest pain and must be very careful. (AR 175–81). At the hearing, Ms. Silva testified that she is unable to work due to her pain, that she is often tired, and has little energy to do things. (AR 35, 36, 40–41).

ALJ Farris found that Ms. Silva's statements concerning the intensity, persistence, and limiting effects of her symptoms to be neither credible nor consistent with the evidence in the record. (AR 19). The ALJ noted that none of Ms. Silva's treating physicians or examining specialists had expressed the opinion that she was unable to work due to her impairments. (AR 19). The ALJ also commented that Ms. Silva left her last job due to non-medical reasons, and that Ms. Silva's long-term unemployment was not due to her alleged impairments. (AR 20). She noted that Ms. Silva's subjective complaints and functional limitations were not entirely supported by the evidence as a whole to the disabling degree alleged. (AR 20). The ALJ pointed to Ms. Silva's non-compliance with her prescribed medication plan, and failure to seek out medication programs for low-income individuals, as evidence that Ms. Silva's condition was not as bad as she claimed. (AR 20).

ALJ Farris concluded that, based on the entire record and her observation of Ms. Silva at the hearing, she could not find Ms. Silva's allegations fully credible, and that the objective evidence did not support a finding of disability. (Doc. 20).

B.  *The Appeals Council*

Ms. Silva requested review of the ALJ's decision by the Appeals Council. She

submitted an additional brief written by John Bishop, an Accredited Disability Representative, dated November 12, 2012. (AR 218–22). She also proffered the results from a transthoracic echocardiogram report ("ECG") taken on June 14, 2011 at UNMHSC, (AR 457–58), as well as treatment records from a myocardial infarction—or heart attack—that she suffered in December 2012, (Doc. 19, Ex. A).

The Appeals Council accepted John Bishop's brief and the ECG report into the record, pursuant to the Order of Appeals Council. The Appeals Council denied Ms. Silva's request for review, explaining that it considered the reasons why Ms. Silva disagreed with the ALJ's decision, as well as the additional evidence listed on the Order of Appeals Council, but that it had found no reason to change the ALJ's decision. (AR at 1–2). The Appeals Council also stated that it "looked at hospital records for the period from December 30, 2012 to January 14, 2013", but that the "new information is about a later time" and "does not affect the decision about whether you were disabled beginning on or before September 25, 2012." (AR 2). Ms. Silva properly appealed the final decision of the Commissioner to this Court.

**IV. Analysis**

Ms. Silva contends that the Appeals Council committed reversible, legal error by failing to properly consider all of the additional evidence that she submitted. (Doc. 20 at 18–20). The Commissioner disagrees with Ms. Silva's characterization of the Appeals Council's decision, and insists it considered all of the additional evidence, but concluded that it did not provide any basis to grant review. (Doc. 20 at 3–5).

Additional evidence must be considered by the Appeals Council if it is new, material, and related to the period on or before the date of the ALJ's decision. 20 C.F.R. §§ 404.970(b), 404.976(b); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

The Court will first determine whether the Appeals Council considered the additional evidence concerning Ms. Silva's heart attack. If not, then the Court should decide whether the additional evidence qualifies as new, material, and chronologically pertinent, and should have been considered.

### A. *The Appeals Council Did Not Consider the Additional Evidence*

The Appeals Council explained that it "looked" at the new evidence concerning Ms. Silva's heart condition, but that it "does not affect the decision about whether [she was] disabled beginning on or before September 25, 2012", because it concerns "new information . . . about a later time." (AR 2). The parties disagree about the meaning of that statement. Ms. Silva contends that it reveals the Appeals Council rejected the additional evidence for being about a later time, falling short of the 20 C.F.R. §§ 404.970(b) and 404.976(b) requirement that additional evidence be chronologically pertinent. (Doc. 19 at 18). The Commissioner responds that the statement proves that the Appeals Council considered the evidence, but ultimately found it to be unpersuasive because it was not temporally-relevant. (Doc. 20 at 14).

Ms. Silva argues that the Appeals Council's statement that the medical records were about a later time is an implicit finding that the evidence was not "related to the period on or before the date of the ALJ's decision." *See* 20 C.F.R. §§ 404.970(b), 404.976(b). She reasons that, if the Appeals Council found that the evidence did not satisfy all of the requirements set forth in 20 C.F.R. §§ 416.1470(b) and 404.976(b), then the Appeals Council could not consider the evidence at all. The Tenth Circuit has explained that once the Appeals Council finds that additional evidence is about a later time, it cannot consider that evidence in reviewing the ALJ's decision. *See Padilla v. Colvin*, No. 12-2097, 2013 U.S. App. LEXIS 9406, at *5–6 (10th Cir. May 9, 2013)

8

(unpublished) ("[T]he Appeals Council's dismissal of the additional evidence's import on the grounds that it was not temporally relevant indicates that it ultimately found the evidence did not qualify for consideration at all.").

In this case, it is telling that the Appeals Council omitted the medical records concerning Ms. Silva's heart attack from the administrative record, while adopting the other additional evidence into the record. The Appeals Council stated that it "considered . . . the additional evidence listed on the enclosed Order of Appeals Council." (AR 1). The only evidence listed on the Order of Appeals Council consists of the brief written by John Bishop, and the ECG report; it does not include any of the other additional evidence that Ms. Silva submitted. (AR 6). The Appeals Council's acceptance of new evidence into the administrative record is a tacit acknowledgment that the evidence is qualifying and will be considered. *See Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011); *Martinez*, 444 F.3d at 1207–08. Therefore, the Court will infer that evidence omitted from the record was deemed not to qualify for consideration.

The Court further notes that the Appeals Council stated that it "looked at the hospital reports for the period from December 30, 2012 to January 14, 2013," but not that it considered them. Since it is the general practice of the Court to take the Appeals Council at its word when it declares that it has or has not considered a matter, the Court finds no reason to depart from that practice here. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

For all of the foregoing reasons the Court finds that the Appeals Council did not consider the additional medical records concerning Ms. Silva's heart attack.

B. <u>The Appeals Council Erroneously Rejected the Additional Evidence</u>

Ms. Silva contends that the Appeals Council erred by rejecting the additional

9

medical evidence concerning her heart attack. (Doc. 19 at 18). She argues that because the evidence was new, material, and related to the period on or before the date of the ALJ's decision, that it should have been considered by the Appeals Council. *See* 20 C.F.R. §§ 404.970(b), 404.976(b). Whether the additional evidence qualifies as new, material, and chronologically pertinent is a question of law subject to *de novo* review by this Court. *See Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). If the Appeals Council failed to consider qualifying new evidence, then the case should be remanded for further proceedings. *Id.*

Evidence is "new" within the meaning of §§ 404.970(b) and 416.1470(b) if it is not "duplicative or cumulative." *Id.* The cardiology report dated January 14, 2013, indicates that Ms. Silva presented to the hospital with non-ST-elevation myocardial infarction on December 30, 2012. Ms. Silva remained hospitalized from December 30, 2012 through January 14, 2013. (Doc. 19, Ex. A at 4). Ms. Silva's physician, Wyatt Voyles, M.D., observed that Ms. Silva had complete occlusion of the circumflex artery, and that the doctors had been unable to cross the occlusion with a guide wire to offer catheter reperfusion. (Doc. 19, Ex. A at 4). Dr. Voyles noted that Ms. Silva's hospital stay was complicated by bouts of anxiety, and persistent, unrelenting chest discomfort. (Doc. 19, Ex. A at 4). At a visit with Dr. Voyles on January 14, 2013, Ms. Silva complained of heartburn, indigestion, a migratory pattern of pain, nausea, and vomiting. (Doc. 19, Ex. A at 4). The Court finds that these medical records contain new information about Ms. Silva's worsening heart condition, and that they are neither duplicative nor cumulative.

Evidence is material to the determination of disability if there is a reasonable possibility it would have changed the outcome of the ALJ's decision. *See id.* As stated above, Ms. Silva applied for disability benefits due to her alleged debilitating heart

10

Case 1:13-cv-00623-CG Document 23 Filed 05/12/14 Page 11 of 13

condition and high blood pressure. The ALJ found those impairments to be non-severe at step two, and determined they did not cause Ms. Silva any significant functional limitations at step four.

Ms. Silva contends that the additional evidence regarding her heart attack puts her prior, consistent complaints of fatigue and dizziness "into context." (Doc. 21 at 4) (citing AR 175, 210, 276, 400). The record shows that Ms. Silva sought care at a Phoenix Baptist Hospital as early as June 2005 for chest pain and high blood pressure with headache. (AR 382). She was subsequently hospitalized in June 2010 for atypical, severe chest pain radiating to her left arm, with nausea and dizziness. (AR 348). In January 2011 she sought treatment at an urgent care clinic due to chest pain. (AR 239). Throughout 2011 she complained of constant fatigue, chronic chest pain, and dizziness. (AR 175,178, 184, 210, 276). She reported to Liana Ponce, M.D., in January 2012, that she had suffered from exhaustion for months before the visit. (AR 400).

Ms. Silva argues that the additional evidence of severe cardiac impairment renders her long-standing complaints of cardiac trouble credible, and lends further support to her complaints of fatigue and dizziness. (Doc. 19 at 21). Ms. Silva points out that the ALJ's stated reason for discounting the effects of Ms. Silva's heart problems and high blood pressure was because there was a lack of objective medical evidence to support those limitations. The ALJ explained that the lack of medical evidence in the record reflected negatively on Ms. Silva's overall credibility. Ms. Silva contends that the medical evidence of her heart attack provides the evidentiary support for her earlier symptoms of fatigue, dizziness, and chest pain, and therefore the ALJ's credibility determination and RFC were erroneous.

The Commissioner responds that the additional evidence proves that Ms. Silva did

not experience any medical condition that would prevent her from doing light work prior to ALJ Farris' decision on September 25, 2012. (Doc. 20 at 14). The Commissioner points out that Dr. Voyles described Ms. Silva's past medical history as "comorbidities of hypertension as well as depression . . . a history of past cholecystectomy," but did not include heart problems or chest pain. (Doc. 20 at 14). The Commissioner notes that Dr. Voyles did not observe evidence of any back or lower extremity complaints, problems, or limitations. (Doc. 20 at 14). Ms. Silva replies that the additional evidence is still relevant to whether her pre-existing cardiac symptoms accounted for her self-reported functional limitations. (Doc. 21 at 5).

The medical records about Ms. Silva's heart attack may provide evidentiary support for her complaints of chest pain and discomfort, fatigue, and dizziness. Lack of medical evidence in the record is the reason why the ALJ discounted those complaints. Because the new medical evidence includes information that could reasonably change the outcome of the Commissioner's decision, the Court finds it to be material.

New and material evidence is chronologically pertinent if it relates to the period on or before the date of the decision. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). Dr. Voyle evaluated Ms. Silva's heart condition from December 2012 through January 2013. Ms. Silva contends that his assessment reasonably relates back to the relevant time period because it establishes a basis for her disability claim that she suffered from a pre-existing heart condition. The Court finds that there is sufficient evidence in the record to find a connection between Ms. Silva's December 2012 heart attack and her previous complaints of heart trouble. Those complaints existed well before the date of the ALJ's decision, and are ongoing. Therefore, the Appeals Council erred in finding the evidence did not relate back to the earlier time period.

The Court finds the additional medical evidence from Ms. Silva's heart attack to be qualifying new evidence that was erroneously rejected by the Appeals Council. This case will be remanded, and the Commissioner shall accept and consider the additional evidence.

**V.     Conclusion**

The Court holds that the Appeals Council should have considered the evidence concerning Ms. Silva's heart attack. The omission constitutes substantial legal error necessitating a remand for further proceedings consistent with the discussion herein. The Court does not decide any other issue raised by Ms. Silva on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Ms. Silva's *Motion to Reverse or Remand for Rehearing, with Supporting Memorandum*, (Doc. 19), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE